**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| DENNIS LOGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-02749-TLP-cgc |
| v. | ) | |
| | ) | JURY DEMAND |
| COSTCO WHOLESALE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

**ORDER GRANTING COSTCO'S MOTION FOR SUMMARY JUDGMENT**

---

In November 2023, Dennis Loggins ("Plaintiff") sued Costco Wholesale Corporation ("Costco"), alleging that Costco discriminated against him based on his race and retaliated against him for engaging in protected activities.  (ECF No. 1.)  Plaintiff describes himself as an African American male.  (*Id.*)  According to Plaintiff, he engaged in two types of protected activity.  First he recorded a coworker without her consent so he could use the recording as evidence in a separate lawsuit against Costco.  (*Id.*)  And second, he reported his manager for allegedly shoving him with his shoulder while Plaintiff was standing at the time clock.  (*Id.*)  Costco moved for summary judgment.  (ECF No. 27.)  Plaintiff responded to dispute the facts and law (ECF Nos. 30–32,) and Costco replied.  (ECF Nos. 33–34.)  For the reasons below, the Court **GRANTS** Costco's Motion for Summary Judgment.

## <u>BACKGROUND</u>

### I.    Plaintiff's Employment with Costco

Plaintiff has tried to put the facts into dispute here.  But they are largely not disputed,

absent one exception.[1]  The Court will therefore lay out the facts here, as they are undisputed,

and will note the fact which Plaintiff has properly disputed.

Plaintiff worked for Costco for about nine years.  Stefan Mannsbart hired Plaintiff as a

Bakery Manager at Costco's Northeast Memphis warehouse in December 2014.  (ECF No. 27-2

at PageID 135.)  Costco transferred Plaintiff to its Southeast Memphis warehouse on August 31,

2015, after demoting him.  (Id.)  About three years later, Costco transferred Mannsbart to the

Southeast Memphis warehouse.  (Id.)  And about three years after that, Costco demoted Plaintiff

a second time—to the role of Cashier Assistant.  (Id.)

Costco used a formal application and selection process to fill open positions and cross

trainings, which are opportunities for employees to receive training for a role they do not already

hold, at the Southeast Memphis warehouse.  (Id. at PageID 136.)  In 2021, Costco posted and

filled three forklift driver positions.  (Id. at PageID 136–38.)  It posted one part-time position on

May 30 and hired Matthew Davis, the only applicant, on July 26.  (Id. at PageID 137.)  It posted

a full-time position on August 22 and hired Thomas Crawford, the only applicant, on September

12.  (Id.)  Finally, it posted a full-time position on October 24 and hired John Christenson, one of

two applicants, on November 7.  (Id.)

Plaintiff did not apply for any of these positions.  (Id.)  Instead, after the three positions

had been filled, he added his name to a list for those interested in forklift driver cross-training in

---

[1] As Costco notes in its Reply to Plaintiff's Response to Costco's Motion for Summary
Judgment, Plaintiff agrees with Costco on many of the undisputed facts in this case.  (ECF No.
33 at PageID 816; ECF No. 31.)  Further this Court agrees with few exceptions that, of the
remaining facts, Plaintiff "either (1) simply stated he 'does not have knowledge'; (2) 'denied' or
only 'admitted in part' the fact without citing any record evidence actually contradicting the
specific fact; or (3) 'denied' factual statements related to what video shows occurred at the time
clock, solely by citing an affidavit of Elvie Maclin (even when irrelevant to the fact)."  (ECF No.
33 at PageID 816.)

December 2021. (*Id.* at PageID 137–38.) Between December 2021 and Plaintiff's termination, Costco did not hire or conduct cross-trainings for forklift drivers, and Plaintiff never applied for any forklift driver opening. (*Id.* at PageID 138.)

On February 21, 2023, Plaintiff called Dannetta Brimm to lodge a complaint that Mannsbart had shoved him with his shoulder about one week before while Plaintiff was clocking in in the morning. (*Id.* at PageID 138.) Brim relayed that complaint to Justin Spira, a Vice President and Regional Operations Manager for Costco. (*Id.* at PageID 139.) Spira called Plaintiff to discuss his complaint, and Plaintiff said the alleged shove occurred near the time he called Brim. (*Id.*) Spira had Sean Constable, a member of Costco's Southeast Regional Loss Prevention Team, review the security footage, and after reviewing the footage of the time clock from February 10 to February 22, Constable confirmed that Mannsbart had not touched Plaintiff as he had claimed. (*Id.*)

In fact, during those dates, the video revealed that Mannsbart and Plaintiff were only near each other on February 11. (*Id.*) And Mannsbart did not contact Plaintiff at that time. (*Id.*) Constable reported his conclusion to Spira. (*Id.*) The Court also reviewed the security video footage of the time clock from every day that Plaintiff worked in February 2023 and found no evidence that Mannsbart shoved Plaintiff during that month.[2]

Sometime around February 17, 2023, Winfred Hamilton, a coworker of Plaintiff's, reported that Plaintiff had told him that he had filed charges with the local police against

---

[2] Plaintiff attempts to put the video footage into dispute by providing the Court with the affidavit of Elve Maclin, testifying to the shoving incident. (ECF No. 31 at PageID 800–01, 808–09.) Defendant argues, citing *Scott v. Harris* and *Shreve v. Franklin County*, that the Court has to take the video evidence as undisputed when it contradicts any affidavit. (ECF No. 33 at PageID 816–17 (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Shreve v. Franklin County*, 743 F.3d 126, 132 (6th Cir. 2014)).) Upon review of the case law, the Court agrees with Defendant and finds the video evidence to be undisputed.

Mannsbart for the alleged shove. (*Id.* at PageID 140.) On February 23, Costco's counsel emailed Plaintiff's counsel asking if the report was accurate. (*Id.*) Plaintiff's counsel responded that Plaintiff had not filed a police report. (*Id.*) Spira learned of Plaintiff's counsel's response and concluded that Plaintiff had spread false and malicious gossip in the warehouse. (*Id.*) Plaintiff later filed a police report on March 27. (*Id.* at PageID 143.)

## II. Complaint Against Plaintiff and Discipline

In 2017, Plaintiff recorded his coworker Angela Tuggle without her consent. (*Id.* at PageID 140.) He claims that he was trying to collect evidence to be used in a separate lawsuit that he had filed against Costco.[3] (*Id.*) Plaintiff's counsel deposed Tuggle on March 16, 2023, in this case and revealed that Plaintiff had previously recorded her. (*Id.* at PageID 140–41.) Tuggle then submitted a written complaint to Costco protesting Plaintiff's recording of her without consent. (*Id.* at PageID 141.) In her complaint, Tuggle accused Plaintiff of violating Costco's Employee Agreement. (*Id.*) She argued that his actions were grounds for termination, and she asked Costco to terminate Plaintiff's employment. (*Id.*) Wendy Davis, a Senior Vice President at Costco, and Spira learned about Tuggle's complaint. (*Id.*) Mannsbart, Spira, Davis, and Yoram Rubanenko, an Executive Vice President and Chief Operations Officer, did not learn that Plaintiff had recorded Tuggle until at least February 2023. (*Id.*)

Spira and Davis then reviewed Plaintiff's conduct and the information they had obtained. (*Id.*) They concluded that Plaintiff had recorded a coworker without her consent, that he had been dishonest about Mannsbart shoving him and filing the police report, that he had spread

---

[3] Plaintiff sued Costco twice before alleging employment discrimination. *Loggins v. Costco Wholesale Corp.*, No. 2:17-CV-2688, 2019 WL 2203120 (W.D. Tenn. May 21, 2019); *Loggins v. Costco Wholesale Corp.*, No. 2:22-CV-02026-TLP-tmp, 2024 WL 5486270 (W.D. Tenn. Jan. 10, 2024). The Court granted summary judgment on Plaintiff's claims in each of these earlier lawsuits.

malicious gossip about that alleged shove and that he had filed a police report for the alleged

shoving incident.  (*Id.*)  They concluded that his conduct violated Costco's Employee

Agreement, an agreement by which each employee, including Plaintiff, agrees to be bound.  (*Id.*

at PageID 135–36, 141–42.)

The Agreement prohibits recording a coworker without consent, dishonesty, and

spreading malicious gossip.  (ECF No. 27-5 at PageID 415–19.)  And it provides that any such

violation is an independent ground for termination.  (*Id.*)   Spira and Davis chose to give

Plaintiff an Employee Counseling Notice ("ECN") and suspend him from work on March 25,

2023, pending review of his employment status.  (ECF No. 27-2 at PageID 142.)  They then

decided to fire Plaintiff, and Rubanenko affirmed their decision.  (*Id.*)  Costco fired Plaintiff on

March 28, 2023.  (*Id.*)  Plaintiff does not dispute that he was fired for recording his coworker

without her permission, the dishonesty, and the malicious gossip.  (*Id.*)

After his termination, Plaintiff submitted an appeal to Costco, claiming that he had been

intentionally shoved by Mannsbart.  (*Id.* at PageID 143.)  Rubanenko upheld Plaintiff's

termination and informed him of the decision.  (*Id.* at PageID 144.)  Plaintiff later filed a Charge

of Discrimination against Costco with the Equal Employment Opportunity Commission

("EEOC") on April 3, 2023, and amended it on April 25, 2023.  (ECF No. 1 at PageID 19–21.)

The EEOC sent Plaintiff a Determination and Notice of Rights on September 7, 2023, informing

him that it would not investigate his Charge of Discrimination and that he could sue either in

state or federal court.  (*Id.* at PageID 22.)  This case followed.

Relevant here are two instances of employee misconduct at Costco's Southeast Memphis

warehouse.  Costco put Luterio Ramirez on an ECN and transferred him to a different position

outside the bakery when he threatened Plaintiff.  (*Id.* at PageID 142, 167.)  Defendant asserts that

Ramirez was demoted, but Plaintiff claims that Costco transferred Ramirez from a part-time to a full-time position. (*Compare Id.* at PageID 142–43; ECF No. 31 at PageID 806.) There is a factual dispute over part of Costco's response to Ramirez's threat—was he demoted or promoted? But the parties agree that after the threat, Costco transferred Ramirez out of the bakery department and issued an ECN.

As for the second instance, Costco put Jacqueline Davis on an ECN and demoted her after she inaccurately logged the time of an employee's sick call. (ECF No. 27-2 at PageID 143.) Worse yet, she then walked out of the meeting meant to resolve the infraction before the meeting ended. (*Id.*)

In this suit, Plaintiff alleges claims of racial discrimination and retaliation in violation of Title VII and § 1981. (ECF No. 1 at PageID 1 (citing 42 U.S.C. §2000e *et seq.*; 42 U.S.C. §1981).) He first alleges that when Costco issued him an ECN, suspended him without pay, and fired him, it did so based on his race and in violation of Title VII and § 1981. (*Id.*) Plaintiff also alleges that Costco took those same disciplinary actions against him in retaliation for engaging in protected activities: recording Tuggle for use in an earlier employment discrimination lawsuit and reporting Mannsbart for allegedly shoving him.[4] (*Id.*) He asserts that this retaliation violates both Title VII and § 1981. (*Id.*) Plaintiff also asserts claims for discrimination and

---

[4] While, Plaintiff alleges in his Complaint that Costco's retaliation was due, in part, to his report of Mannsbart's alleged shove, he notably did not effectively dispute Costco's undisputed fact that he admitted in his deposition that his only basis for his retaliation claims was his recording of Tuggle. (*Compare* ECF No. 1 at PageID 9 *with* ECF No. 31 at PageID 803.) Even still, Plaintiff argues that the retaliation was because of his report of Mannsbart's alleged shove in his Memorandum Brief. (ECF No. 30-5 at PageID 789.) Despite this discord in the record, the basis for Plaintiff's retaliation claims does not change the Court's conclusion, and so, the Court will analyze the claims with both asserted bases.

retaliation under of § 1981 based on Costco's failure to cross train him for a forklift driver

position.

## LEGAL STANDARD

Courts grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). And courts construe all reasonable inferences in favor of the nonmoving party when it considers a motion for summary judgment. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party shows there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In arguing that a genuine issue exists, "the nonmoving party must present significant probative evidence that will reveal that there is more than some metaphysical doubt as to the material facts." *Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 667 (6th Cir. 2022) (internal quotations and citing references omitted). Put differently, "in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citing references omitted). Indeed, Federal Rule of Civil Procedure 56(c)(1)(A) requires that the nonmoving party *cite specific places in the record* to show a genuine dispute of fact exists. Fed. R. Civ. P 56(c)(1)(A) (emphasis added). Even more, "[t]he mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986).

Likewise, if the nonmoving party "fails to make a sufficient showing of an essential

element of his case on which he bears the burden of proof," then the moving party is entitled to

"judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old*

*Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto*

*Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).  But if the Court finds there is

a genuine dispute over material facts, then it must deny summary judgment, and the case should

proceed to trial.  *George v. Youngstown State Univ.,* 966 F.3d 446, 458 (6th Cir. 2020).  Now the

Court will turn to its analysis of Costco's Motion.

## ANALYSIS

Title VII protects employees from discrimination based on their race, color, religion, sex,

or national origin.  42 U.S.C. § 2000e-2(a).  It also protects employees from retaliation when

they oppose conduct that they "reasonably believe[] to be a violation of Title VII." *Johnson v.*

*Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  Section 1981 prohibits intentional racial

discrimination, including by private entities.  42 U.S.C. § 1981.  And it creates a cause of action

for both race-based employment discrimination and employment retaliation.  *See Gen. Bldg.*

*Contractors Ass'n, Inc., v. Pennsylvania*, 458 U.S. 375 (1982); *Davis v. Auburn Bank*, No. 3:15-

CV-655-WKW-WC, 2016 WL 1605349 (M.D. Ala. Mar. 30, 2016), *report and recommendation*

*adopted sub nom. Davis v. Bank*, No. 3:15-CV-655-WKW, 2016 WL 1560404 (M.D. Ala. Apr.

18, 2016), *aff'd sub nom. Davis v. Auburn Bank*, 704 F. App'x 837 (11th Cir. 2017).  The Court

applies the same legal framework to racial discrimination and retaliation claims under both Title

VII and § 1981, although § 1981 requires a showing of but-for causation. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

 A plaintiff can prove a discrimination claim using either direct or circumstantial evidence. *Stokes v. Detroit Pub. Sch.,* 807 F. App'x 493, 499 (6th Cir. 2020). From the direct evidence approach, a plaintiff must present evidence that, on its face, shows that unlawful discrimination was "at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). Using direct evidence, a factfinder "need not draw any inferences to conclude that the employer wrongfully discriminated." *Id.* (citation omitted).

But for claims based on circumstantial evidence, the Supreme Court established a burden-shifting analysis for courts to apply. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). The purpose of this burden-shifting analysis is not to "stymie" a plaintiff but to "bring the litigants and the court expeditiously and fairly to the ultimate question." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Under the *McDonnell Douglas* analysis, Plaintiff must first make a prima facie showing of discrimination. 411 U.S. at 802. If he makes such a showing, the burden shifts to the employer to provide a nondiscriminatory reason for the adverse employment action. *Id.* If the employer provides a nondiscriminatory reason, the burden then shifts back to the employee to show that the employer's reason is really a pretext. *Id.*

Plaintiff bases his discrimination and retaliation claims on circumstantial evidence. And the Court now turns to those claims.

## I.    Race Discrimination Claims Under Title VII and § 1981

### A.    Claims Based on Costco's Disciplinary Actions

Plaintiff claims that Costco discriminated against him when it disciplined him by issuing him an ECN, suspending him without pay, and firing him.  (ECF No. 1 at PageID 7–9.)  For a prima facie case of disciplinary discrimination, a plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal quotations omitted).  If the plaintiff makes this prima facie showing, the defendant must provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* at 706–07.  And if the defendant does so, the plaintiff must then demonstrate that the legitimate nondiscriminatory reason is actually pretext for discrimination.  *Id.*

Prong four of the prima facie case of discriminatory discipline requires the plaintiff to identify some comparator, an individual to demonstrate that the plaintiff "was treated differently than similarly-situated, non-protected employees."  *Id.* at 707.  The plaintiff must be "similarly situated in all of the relevant respects to an employee of a different race who was treated better."  *Johnson v. Ohio Department of Public Safety*, 942 F.3d 329, 331 (6th Cir. 2019).  In the disciplinary context, similarly situated employees have engaged in comparably serious acts.  And to assess the relative seriousness of the employees' acts, the Court considers whether the comparator "has the same supervisor, was subject to the same standards of conduct, and engaged in nearly identical conduct without differentiating or mitigating circumstances that would

11

distinguish their conduct or the employer's response." *Batuyong v. Gayes*, 337 Fed.Appx. 451, 454 (6th Cir. 2009) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir.1992)); *See, e.g.*, *Wright*, 455 F.3d at 710; *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (holding that individuals are not similarly situated as a matter of law when they are disciplined by different decision makers); *Correll v. CSX Transp., Inc.*, 378 F. App'x 496, 502 (6th Cir. 2010) (observing, when affirming summary judgment, that individuals were not comparators when disciplined by different decision makers) *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir. 2010) (a plaintiff and comparator were not similarly-situated where their acts were "qualitatively different things"); *Ruth v. Children's Med. Ctr.*, 1991 WL 151158, at *7 (6th Cir. 1991) (finding a comparator and plaintiff were not similarly situated when the plaintiff engaged in multiple instances of conduct and the comparator engaged in only one instance of conduct). The Court need not consider all the *Mitchell* factors, if any are irrelevant here, and may consider other factors that it considers relevant. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352–53 (6th Cir. 1998).

A legitimate, nondiscriminatory reason for a disciplinary action cannot be pretextual unless the plaintiff shows that the reason is both false and that discrimination is the true reason for the discipline. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Plaintiffs must show, by a preponderance of evidence, that "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [their] discharge, or (3) that they were insufficient to motivate discharge." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).

Costco argues that Plaintiff has not identified a comparator to satisfy prong four. Costco asserts that the two people Plaintiff named did not engage in "nearly identical" conduct, were not

disciplined by the same decision makers as Plaintiff, and, like Plaintiff, they both received ECNs for their conduct. (ECF No. 27-1 at PageID 122–24.) Costco adds that it has legitimate, nondiscriminatory reasons for the disciplinary actions that Plaintiff cannot show are pretextual. (*Id.* at PageID 124–27.)

The Court agrees with Costco. The undisputed facts first demonstrate that both Luterio Ramirez and Jacqueline Davis were punished for different conduct than Plaintiff. Ramirez was punished for threatening Plaintiff, and Davis was punished for incorrectly logging the time of an employee's sick call and walking out of a meeting. (ECF No. 27-2 at PageID 142–43, 167.) Plaintiff, on the other hand, was punished for recording a coworker without her consent, dishonesty, and malicious gossip. (*Id.* at PageID 141–42.) The conduct for which Costco disciplined Plaintiff therefore was not nearly identical to the conduct for which Costco punished his alleged comparators. The acts, themselves, were different and Plaintiff committed more of them. And Plaintiff has offered no evidence suggesting that the same decision makers who disciplined him also disciplined his comparators. This lack of evidence undermines the claim that the comparators are similarly situated to Plaintiff. Finally, like Plaintiff, both Ramirez and Davis received ECNs, so they were not treated better than Plaintiff as to that method of discipline. (*Id.* at PageID 142–43, 167.)

His failure to identify sufficient comparators and to prove the same decision makers are fatal flaws to Plaintiff's racial, disciplinary discrimination claims. The Court need not reach Costco's argument that it had legitimate and non-pretextual, nondiscriminatory reasons for firing Plaintiff. That said, the Court agrees with Defendant on that point as well.

It is undisputed that the relevant decision makers issued Plaintiff an ECN, suspended him, and then fired him because they believed that he had recorded a coworker without her

13

consent, been dishonest, and spread malicious gossip in violation of the Employee Agreement.
(*Id.* at PageID 141–42;) *see also Marthel v. Bridgestone/Firestone, Inc.*, 926 F. Supp. 1293, 1303
(M.D. Tenn. 1996) (granting summary judgment because the plaintiff did not dispute that the
decision maker sincerely believed in the veracity of the legitimate reason justifying the plaintiff's
termination).  Plaintiff even admitted as much in his own deposition.  (ECF No. 27-5 at PageID
226–28, 232.)  It is also undisputed that the decision makers who disciplined Plaintiff relied on
particularized facts they learned during their investigation, including Tuggle's complaint, the
security footage, Hamilton's report, and the confirmation from Plaintiff's counsel that Plaintiff
had not filed a police report.  (ECF No. 27-2 at PageID 138–41, 144;) *Chen v. Dow Chem. Co.*,
580 F.3d 394, 401 (6th Cir. 2009) ("When an employer reasonably and honestly relies on
particularized facts in making an employment decision, it is entitled to summary judgment on
pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'").

The Court therefore concludes that (1) Plaintiff has failed to show that the reasons the
decision makers had for disciplining him were false and (2) that the decision makers' stated
reasons for disciplining Plaintiff actually motivated the disciplinary actions taken.  And it is
undisputed that the conduct for which Plaintiff was disciplined were activities that are explicitly
identified in the Employee Agreement as being subject to discipline, including even termination.
(ECF No. 27-2 at PageID 136.)  The Court also concludes that the decision makers' reasons were
enough to justify the discipline that they doled out.

Plaintiff asserts that Jacqueline Davis' inaccurate logging of a coworker's sick call is
dishonest and thus close enough conduct to Plaintiff's spreading false rumors about Mannsbart
pushing him and filing a police report.  (ECF No. 30-5 at PageID 792.)  Putting aside that
falsifying a sick call or reporting a call inaccurately is qualitatively different than spreading false

14

rumors about a supervisor, Plaintiff also engaged in recording a coworker without consent and spreading malicious gossip. Nothing in Davis' conduct matches those acts. And Davis walked out of a meeting meant to address her conduct, an act different from anything Plaintiff received punishment. To be similarly situated, Davis must have engaged in sufficiently parallel conduct to *all* the conduct for which Plaintiff was punished. *See, e.g.*, *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 459 (6th Cir. 2010); *Ruth v. Children's Med. Ctr.*, 1991 WL 151158, at *7 (6th Cir. 1991). Plaintiff still has not shown that the same decision makers punished Davis. In fact, the decision makers who punished Plaintiff—Spira, Davis, and Rubanenko—were not in their current roles until after both Davis and Ramirez were disciplined. (ECF No. 27-2 at PageID 143.)

For all these reasons, the Court **GRANTS** summary judgment on Plaintiff's claims of racial discrimination as they pertain to the disciplinary actions Costco took against him.

### B.    Claim Based on Costco's Failure to Cross Train Plaintiff

Plaintiff's final racial discrimination claim is that Costco failed to cross train him to be a forklift driver after he signed a list showing interest in cross training in December 2021. (ECF No. 1 at PageID 10–11.) Plaintiff adds that Costco hired "Caucasians who were less qualified" on or after December 2021. (*Id.*) With a failure-to-hire claim, a plaintiff "must show that (1) he was a member of a protected class, (2) he applied for and did not receive the job at issue, (3) he was qualified for the job, and (4) similarly situated persons not in his class received the job for which he applied" to state a prima facie case. *Overall v. RadioShack Corp.*, 202 F. App'x 865, 868 (6th Cir. 2006). Additionally, a plaintiff "must show that the defendant continued to accept applicants for the position from equally qualified persons." *Id.* (internal quotations omitted). If the plaintiff meets this burden, the defendant must then show that they had a legitimate,

nondiscriminatory reason for its failure to hire the plaintiff. *Id.* And if the defendant provides such a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to show that the defendant's reason was pretextual. *Id.*

Costco argues that Plaintiff has failed to state a claim here because he never applied to any forklift driver positions. Plus, according to Costco, all of the forklift drivers that Plaintiff identifies as "similarly situated persons not in his class [who] received the job for which he applied" were hired *before* Plaintiff expressed interest in cross training. (ECF No. 27-1 at PageID 119–21.) Costco also insists that the absence of forklift driver position openings between the time Plaintiff expressed interest in cross training and his ultimate termination creates a legitimate, nondiscriminatory reason for not cross training Plaintiff. (*Id.* at PageID 120.)

The Court agrees with Costco. Plaintiff has not shown that he ever applied for a forklift driver position or cross training, let alone the three that he identifies in his Complaint. *See Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629 (6th Cir. 1987) ("Because it is clear from the record that [Plaintiff] never submitted an application to [Defendant] during the time when applications were being accepted, it is equally clear that [Plaintiff] did not establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).") The three men that Costco hired to be forklift drivers cannot qualify as similarly situated individuals because Plaintiff never applied for the jobs those men received. *See Talbot v. Cuyahoga Cty. Bd. of Mental Retardation & Dev. Disabilities*, No. 1:07CV2862, 2009 WL 312941, at *9 (N.D. Ohio Feb. 6, 2009) ("When the employer has a formal application process, submission of an application pursuant to that process is an essential part of the second prong of the *McDonnell Douglas* test to show a prima facie case of race discrimination."); *Tartt v. Wilson County.*, 982 F.Supp.2d 810, 818 (M.D. Tenn. 2013) ("Because the last opening for an

Animal Control Officer position was filled at least two months before [Plaintiff] applied for it, and because there have been no openings since then, [Plaintiff] cannot show that 'he applied ... for a job for which the employer was seeking applicants.'").

And it is undisputed that Costco did not have any more forklift driver openings after Plaintiff expressed interest in cross training until his termination.  *See Tyler v. Runyon*, 70 F.3d 458, 467–68 (7th Cir. 1995) ("However, [Plaintiff] must also establish that after he was denied instruction for the window clerk position, the Postal Service continued to seek applicants for the same position. The evidence does not bear this element out, for it is undisputed that at the time [Plaintiff] requested preparation as a window clerk, the Post Office at Rantoul had no opening, thus no need for any replacement window clerks, and it was not training anyone for that position.").  Plaintiff has therefore failed to make a prima facie showing of racial discrimination related to Costco's failure to cross train him as a forklift driver.  And Costco has a legitimate nondiscriminatory reason for failing to cross train Plaintiff after he expressed interest.

For these reasons, the Court **GRANTS** summary judgment for Costco on Plaintiff's claim of racial discrimination over Costco's failure to cross train Plaintiff as a forklift driver.

## II.    Retaliation Claims under Title VII and § 1981

As with Title VII and § 1981 discrimination claims, an employee can make Title VII and § 1981 retaliation claims "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir. 2008)).

When an employee uses the circumstantial approach to prove retaliation, courts employ the *McDonnell Douglas* burden-shifting framework.  To state a prima facie case of retaliation, an

employee must show that: (1) he engaged in protected activity; (2) his employer knew about this protected activity; (3) the employer then took a materially adverse action against the employee; and (4) a causal connection exists between this protected activity and the adverse employment action or harassment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The plaintiff must establish that retaliation was the but-for cause of each alleged adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (italics removed) (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)).

If an employee establishes a prima facie case of retaliation, the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the action. *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 571 (6th Cir. 2021) (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If the employer does so, the burden then shifts back to the employee to show pretext, or in other words, that "the proffered reason was not the true reason for the employment decision." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). If there is more than one proffered reason, the plaintiff must prove that each reason for the employment decision was pretextual. *Wilson v. Cleveland Clinic Foundation*, 579 Fed.Appx. 392, 402 (6th Cir. 2014) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998); *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir.2009). The same ways to show pretext in discrimination claims apply with retaliation claims as well.

Plaintiff tries to make his retaliation case with circumstantial evidence, and the Court will now address those claims.

Plaintiff asserts that Costco retaliated against him for complaining about the alleged shoving incident and for recording Tuggle in 2017 to gather evidence for his ongoing lawsuit. (ECF No. 1 at PageID 9–10.)  He claims that Costco retaliated against him by issuing him an ECN, suspending him without pay, firing him, and by not training and selecting him as a forklift driver.  (*Id.*)  Plaintiff, though, has not argued that Costco retaliated against him by not training and selecting him as a forklift driver in his Response to Costco's Motion for Summary Judgment. (ECF No. 30-5.)  A plaintiff abandons a claim when he fails to argue it in his response to the defendant's motion for summary judgment, and the court need not consider the claim's merits. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x. 368, 372 (6th Cir. 2013) (citation omitted); *see also Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) (finding a plaintiff abandoned a claim on summary judgment when he "cited no authority and made no legal argument as to [the claim]"); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) ("[t]he district court properly declined to consider the merits of this claim because [plaintiff] failed to address it in either his response to the summary judgment motion or his response to [defendant's] reply brief"); *Colston v. Cleveland Pub. Libr.*, No. 1:12-CV-204, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2012) (holding that the plaintiff abandoned a claim and granting summary judgment when the plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").  The Court therefore will not consider the claim that Costco retaliated against Plaintiff by failing to select and train him as a forklift driver and will consider only the claims that it retaliated against him through the disciplinary actions.

Costco asserts that Plaintiff cannot state a prima facie case that it retaliated against him for reporting the alleged shoving incident because Plaintiff did not engage in a protected activity.

(ECF No. 27-1 at PageID 128.)  It claims that complaining about a shove was not a protected activity because Plaintiff did not complain about discrimination, nor did he have a good faith belief that Mannsbart had engaged in conduct violating Title VII.[5]  (*Id.* at PageID 128–32.) Finally, Costco argues that it had legitimate, non-retaliatory reasons for the disciplinary actions that it took, which Plaintiff cannot show are pretextual.  (*Id.* at PageID 132–33.)

The Court agrees with Costco and further finds that Plaintiff has not made a prima facie case for his allegation that Costco retaliated against him for recording Tuggle in 2017.  First, "'[c]omplaints concerning unfair treatment in general' are insufficient to constitute protected activity if they do not 'specifically address discrimination.'"  *Philip v. Wrigley Mfg. Co.*, No. 1:09-cv-144, 2010 WL 4318880, at *11 (E.D. Tenn. Oct. 22, 2010) (quoting *Weaver v. Ohio State Univ.*, 71 F.Supp.2d 789, 793–94 (S.D.Ohio 1998)).  The undisputed facts here show that Plaintiff complained that Mannsbart shoved him, but they do not establish that Plaintiff complained that Mannsbart discriminated against him.  (ECF No. 27-2 at PageID 138.)  Simply put, a complaint is only a protected activity if it is based on a "reasonable and good faith belief that the opposed practices were unlawful."  *Jackson v. Genesee Cty. Road Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021).  And Plaintiff could not have had a good faith belief that he was complaining about an unlawful practice because the undisputed facts and the Court's own review of the video footage confirm that the alleged shove never occurred.  (ECF No. 27-2 at PageID 139.)  For these reasons, Plaintiff did not engage in a protected activity and therefore has not stated a prima facie case that Costco retaliated against him for complaining about the alleged shove.

---

[5]Costco adds that, because the shove never happened, Plaintiff could not have an objectively reasonable belief that the alleged shove violated Title VII.  Although this point has logical appeal, the Court finds that the other arguments carry the day, so it need not address this one.

While Costco did not argue that Plaintiff has failed to state a prima facie case for its claim that Costco retaliated against him for recording Tuggle in 2017, the Court finds that to be true. (*See* ECF No. 27-1 at PageID 128–32.) Even if Plaintiff meets the first three prongs of the prima facie retaliation claim, he still must establish but-for causation. But-for causation requires proof "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The Court in *Nassar* rejected the argument that motivating-factor causation, which courts apply in Title VII discrimination cases, should also apply to retaliation claims. *Id.* at 362–63. Motivating-factor causation requires only enough evidence to prove that discrimination was one of the employer's motives. *Kubik v. Central Michigan Univ. Bd. of Trs.*, 717 Fed.Appx. 577, 585 (6th Cir. 2017).

And so but-for causation requires enough evidence to show that without the protected activity the alleged retaliation would not have occurred. The undisputed facts here show however that Costco had three reasons for its disciplinary actions: that Plaintiff had recorded Tuggle without her consent, that he had been dishonest, and that he had spread malicious gossip. (ECF No. 27-2 at PageID 141–42.) And each of these reasons was enough to justify the disciplinary actions that Costco took because the Employee Agreement authorized Costco to discipline employees up to termination for each violation. (ECF No. 27-5 at PageID 415–19.) Since Plaintiff has provided no evidence to dispute that Costco could have fired him for any of the listed conduct, he has not provided enough evidence to show that, absent Plaintiff recording Tuggle, he would not have been punished as he was. Plaintiff has not established but-for causation and so he has failed to make a prima facie showing for his claim that Costco retaliated against him for recording Tuggle without her consent in 2017.

21

Finally, while the Court need not address Costco's argument that it had legitimate, nondiscriminatory reasons for the disciplinary actions that it took against Plaintiff, it nevertheless agrees with Costco.  In its Motion for Summary Judgment, Costco points to its reasoning that it advanced in its response to Plaintiff's discrimination claims when it asserts that it had legitimate, nondiscriminatory reasons for those same actions under its response to the retaliation claims. (ECF No. 27-2 at PageID 132–33.)  Costco's nondiscriminatory reason for the alleged retaliation must not discriminate based on the protected activity, or in other words, it must be a non-retaliatory reason.  *See, e.g.*, *Key v. City of Detroit*, 732 F. Supp. 3d 721, 736 (E.D. Mich. 2024); 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.")

The Court recognizes that it is unclear whether firing Plaintiff for recording his coworker without her consent would be a non-retaliatory reason if the act of recording the coworker was also a protected activity.  Still, Costco has two other legitimate reasons (dishonesty and spreading malicious gossip), and Plaintiff admitted to their validity and has provided no evidence to show that they are pretextual.  Since Plaintiff cannot show that each independent reason for the disciplinary actions taken by Costco was pretextual, Costco has at least two legitimate reasons unrelated to the alleged retaliation or racial discrimination that defeat Plaintiff's retaliation claims even if Plaintiff were able to state a prima facie case.

Plaintiff attempts to dispute the relevant decision maker for his discipline by asserting a "cat's paw" theory.  (ECF No. 30-5 at PageID 789.)  He insists that Mannsbart fuels the decision

to discipline and terminate him.  (*Id.*)  He cites an Eleventh Circuit case for the proposition that, "[w]hen a decisionmaker acts in accordance with a retaliator's bias 'without [him]self evaluating the employee's situation,' the retaliator 'clearly causes the tangible employment action, regardless of which individual actually' enforces the adverse transfer or termination."  (*Id.* (quoting *Llampas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998)).)  But the undisputed facts show that Spira and Davis decided to discipline Plaintiff after an independent investigation.  (ECF No. 27-2 at PageID 141–42;) *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) ("[W]hen a decisionmaker makes a decision based on an independent investigation, any causal link between the subordinate's retaliatory animosity and the adverse action is severed.")  Plaintiff has therefore not adequately supported a cat's paw theory of retaliation.

For all these reasons, the Court **GRANTS** summary judgment on Plaintiff's retaliation claims.

## CONCLUSION

For the above reasons, Costco's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**, this 23rd day of October, 2025.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE